UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ASHTON A. SMITH,

               Plaintiff,

v.

DALE BROWN et al.,

               Defendants.

_____/

Case No. 1:25-cv-379

Honorable Jane M. Beckering

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983, 42 U.S.C. § 1985, and the Americans with Disabilities Act (ADA). The Court will grant Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss, for failure to state a claim, the following claims: § 1983 official-capacity claims, First Amendment claims for interference with Plaintiff's access to the courts, Fourth Amendment claims, Eighth Amendment claims concerning verbal harassment and threats and the denial of copies, Fourteenth Amendment claims, claims for violations of MDOC policy and work rules, conspiracy claims, claims for violation of § 1985, and

ADA claims against Defendants Zupon and Kerr in their individual capacities. Plaintiff's First Amendment retaliation claims, Eighth Amendment claims against Defendants Zupon and Kerr for the denial of Plaintiff's walking aid, and ADA claims against Defendants Zupon and Kerr in their official capacities remain in the case.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Macomb Correctional Facility (MRF) in New Haven, Macomb County, Michigan. The events about which he complains, however, occurred at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. Plaintiff sues the following ICF staff in their individual and official capacities: Warden Dale Brown,[1] Law Librarian Unknown Novak, Librarian Tech Unknown Zupon, and Sergeant Unknown Kerr. (Compl., ECF No. 1, PageID.2–3.)

Plaintiff alleges that, on May 21, 2024, Plaintiff was in the ICF library when he completed a photocopy disbursement form and submitted it with the motion to be copied to Defendant Zupon. (*Id.*, PageID.5.) Defendant Zupon denied Plaintiff's request for copies because Plaintiff did not have sufficient funds in his account and told Plaintiff to copy the motion by hand. (*Id.*) Plaintiff then told Defendant Zupon that he could not afford copies and could not copy the motion by hand due to a "very painful hand and wrist condition." (*Id.*) Nonetheless, Defendant Zupon refused to make copies. (*Id.*)

Plaintiff then told Defendant Zupon that Plaintiff would be filing a grievance. (*Id.*) Hearing that, Defendant Novak interjected, saying, "Who do you think you are demanding copies and

---

[1] Plaintiff refers to this Defendant throughout the complaint as both Warden Dale Brown and Dale Bonn. The Court will use "Brown" as that is the name listed in the caption of Plaintiff's complaint and Plaintiff's list of parties.

threatening to grieve Zupon! You haven't shown any necessity for five copies today. Show me the

Court rule again!!!" (*Id.*, PageID.6.) Plaintiff showed Defendant Novak the Federal Rule of Civil

Procedure, but again Defendant Novak denied Plaintiff's request for copies. (*Id.*) Plaintiff stated

that he would be filing a grievance on Defendant Novak as well. (*Id.*)

      Defendant Novak responded by getting his face "about 7 inches" from Plaintiff's face and

yelling, "'Shut-up!', 'Shut-up!!!' I'm sick of your grievance talk, you stupid prisoner, you are

nothing, trash! I will show you what I can do to stupid blind people like you who comes in here

and threatens me." (*Id.*, PageID.6–7.) Defendant Novak ordered non-party Corrections Officer

Gregory to take Plaintiff to segregation for threatening behavior and to "lace [Plaintiff's] a** up

and be creative with it." (*Id.*, PageID.7.) Officer Gregory refused, telling Defendant Novak that he

would not lie about the interaction between Plaintiff and Defendant Novak. (*Id.*) Defendant Novak

then told Plaintiff that he would find someone to "lie on [Plaintiff]," calling Plaintiff a "blind piece

of sh*t, and ordered Officer Gregory to remove Plaintiff from the library. (*Id.*)

      On June 16, 2024, Plaintiff was again in the ICF library and submitted a completed legal

photocopy form and pleadings to Defendant Zupon. (*Id.*, PageID.8.) Defendant Zupon stated, "I

usually do not bite but since you bit me first, I have to bite you back." (*Id.*, PageID.9.) Defendant

Zupon then refused to make copes and confiscated Plaintiff's pleadings, telling Plaintiff that

Plaintiff would need to re-write them by hand. (*Id.*) Defendant Zupon demanded that Plaintiff leave

the library or be "cuffed-up and dragged to seg." (*Id.*) When Plaintiff requested his "walking aid"

to escort him because he cannot see, Defendant Zupon ordered Plaintiff to leave the library and

refused to call Plaintiff's walking aid, stating, "I don't care that you can't see, I am not waiting on

your walking aid, if Sgt. Kerr arrives before your walking-aid, you are going to be dragged to

seg!." (ECF No. 1, PageID.9.)

"[M]oments later," Defendant Kerr arrived and told Plaintiff that Plaintiff's legal papers were being confiscated because they were considered "forgery" and "altered" because Plaintiff had used the sticky part of the envelope as correction tape to cover his errors, which Plaintiff alleges is not prohibited by MDOC policy. (*Id.*, PageID.9–10, 11.) Defendant Kerr told Plaintiff, "Either leave now, or leave in cuffs." (*Id.*, PageID.10.) When Plaintiff again requested his walking aid, Defendant Kerr stated, "If I walk you any where you are going to seg. Don't make me call me guys or you'll get your a** kicked now and you'll end up in seg beaten up, you been warned." (*Id.*, PageID.10.) Defendant Kerr also said, "You like writing grievances, this ought to be a good one." (*Id.*) Defendant Kerr refused to call Plaintiff's walking aid and instead ordered Plaintiff to cuff up. (*Id.*) Plaintiff complied and was taken to administrative segregation. (*Id.*)

Plaintiff alleges that Defendant Zupon retained Plaintiff's confiscated papers, consisting of a discovery request in *Smith v. Haiderer*, Case No. 2:23-cv-11509, for 15 days. (*Id.*, PageID.11.) On July 2, 2024, non-party Sergeant Swanson conducted a hearing regarding the purportedly altered legal papers confiscated by Defendant Zupon. (*Id.*, PageID.12.) Defendant Swanson returned Plaintiff's legal papers to him. (*Id.*)

On July 9, 2024, Plaintiff submitted a photocopy form and discovery requests for *Smith v. Unknown Williams*, Case No. 1:23-cv-637, to Defendant Zupon via non-party Prisoner Counselor Hengesbach. (*Id.*) Defendant Zupon again confiscated Plaintiff's discovery request because Plaintiff had used the sticky part of the envelope as correction tape to paste over words. (*Id.*) On July 15, 2024, Prisoner Counselor Hengesbach told Plaintiff, "That Defendant [Brown] was tired of hearing about you grieving sh*t and he told them to take your sh*t and throw it away." (*Id.*, PageID.13.) Defendants did not return Plaintiff's discovery requests. (*Id.*, PageID.14.)

Plaintiff claims that Defendants Novak, Zupon, Kerr, and Brown retaliated against Plaintiff in violation of Plaintiff's First Amendment rights; Defendants Novak, Zupon, and Kerr demonstrated deliberate indifference to Plaintiff's medical condition in violation of Plaintiff's Eighth Amendment rights; and Defendants Novak and Zupon confiscated Plaintiff's legal papers, interfering with Plaintiff's access to the Courts, in violation of Plaintiff's "First and Fourth" Amendment rights. (*Id.*, PageID.15.) Plaintiff also brings claims for violation of 42 U.S.C. § 1985 and the ADA. (*Id.*, PageID.1.) As a result of the events described within Plaintiff's complaint, Plaintiff seeks declaratory and monetary relief. (*Id.*)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71

(6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

### A.    Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Here, Plaintiff avers that Defendants violated his First Amendment right to be free from unlawful retaliation, First Amendment right to access to the Courts, Fourth Amendment rights, and Eighth Amendment right to medical care. (ECF No. 1, PageID.15.) The Court will also liberally construe Plaintiff's complaint as raising an Eighth Amendment claim for verbal abuse, and a Fourteenth Amendment due process claim regarding the deprivation of Plaintiff's legal papers.

### 1.    Official Capacity Claims

Plaintiff sues Defendants in both their individual and official capacities. (ECF No. 1, PageID.1.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama*

*v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994).

Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*,

440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in

federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of

Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money

damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66);

*Harrison*, 722 F.3d at 771.

Here, Plaintiff seeks monetary damages. However, an official capacity defendant is

absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of

Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). Therefore, Plaintiff may not seek monetary

damages against Defendants in their official capacities, and he fails to state a claim against

Defendants in their official capacities upon which relief can be granted.

Plaintiff also seeks declaratory relief. (ECF No. 1, PageID.15.) Although damages claims

against official capacity defendants are properly dismissed, an official capacity action seeking

injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex Parte

Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not

bar prospective injunctive relief against a state official). The United States Supreme Court has

determined that a suit under *Ex parte Young* for prospective injunctive relief should not be treated

as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the

doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state

and therefore cannot be considered to have been done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to

avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law

and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief).

The Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Here, Plaintiff is no longer confined at ICF, which is where he avers that Defendants are employed. Plaintiff's request for declaratory relief does not relate to an ongoing violation and is not prospective. Thus, he cannot maintain his claims for declaratory relief against Defendants in their official capacity.

For all the reasons set forth above, Plaintiff has failed to state a claim against Defendants in their official capacities on which relief may be granted. Accordingly, Plaintiff's official capacity claims against Defendants will be dismissed for failure to state a claim.

## 2.    First Amendment Retaliation

Plaintiff alleges that Defendants retaliated against Plaintiff in violation of Plaintiff's First Amendment rights. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a

person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

With respect to the first element of a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."). Here, Plaintiff references making verbal complaints and threatening to file grievances against Defendants on May 21, 2024. (ECF No. 1, PageID.5–6.) He also avers that Defendants made statements on June 16, 2024 and July 9, 2024 concerning grievances filed by Plaintiff on other occasions. (*Id.*, PageID.10, 14.) At this stage of the proceedings, Plaintiff has alleged sufficient facts to suggest that he engaged in protected conduct for purposes of his First Amendment claim.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). Finally, to satisfy the

third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct.

Taking Plaintiff's allegations concerning the actions and statements of Defendants Zupon, Novak, Kerr, and Brown as true as is required at this stage, Plaintiff will be permitted to proceed with his First Amendment retaliation claims against Defendants.

### 3.    First Amendment Access to the Courts

Plaintiff alleges that Defendants interfered with Plaintiff's access to the courts in refusing to photocopy and in confiscating Plaintiff's legal documents. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The right of access to the courts prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

To state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead that the defendants' actions have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378,

391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court has squarely held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Plaintiff describes only that Defendants refused to photocopy unidentified pleadings on June 16, 2024; and, on July 2, 2024 and July 9, 2024, refused to photocopy and confiscated discovery requests for the cases of *Smith v. Haiderer*, Case No. 2:23-cv-11509, and *Smith v. Unknown Williams*, Case No. 1:23-cv-637. Plaintiff does not describe the nature of these actions and has not alleged facts from which the Court can reasonably infer that Plaintiff was harmed in his ability to pursue non-frivolous claims. Accordingly, the Court finds that Plaintiff has failed to state a cognizable First Amendment claim for interference with Plaintiff's access to the courts.

### 4.     Fourth Amendment Claim

Plaintiff referenced the Fourth Amendment when describing his claims regarding the confiscation of his legal papers. (ECF No. 1, PageID.15.) The Fourth Amendment protects against unreasonable searches and seizures of one's person. U.S. Const. amend. IV. However, in *Hudson v. Palmer*, 468 U.S. 517 (1984), the Supreme Court considered and rejected a Fourth Amendment claim concerning the seizure of legal papers.

In *Hudson*, a prison official searched a prisoner's cell and destroyed some of his legal papers in the process. *Id.* at 519, 535. The prisoner claimed that the prison official's conduct

constituted an unreasonable search and seizure of his property, in violation of the Fourth Amendment. *Id.* at 530. The Court disagreed.

First, the Court recognized that while prisoners are not beyond the reach of the Constitution, "curtailment of certain rights is necessary, as a practical matter, to accommodate a 'myriad of institutional needs and objectives' of prison facilities, . . . chief among which is internal security." *Id.* at 523–24 (internal citation omitted).

The Court then determined that the official's search of the prisoner's cell did not violate the Fourth Amendment because "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell." *Id.* at 526. According to the Court, "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Id.* at 527–28.

For similar reasons, the Court held that "the Fourth Amendment does not protect against seizures in a prison cell [.]" *Id.* at 528 n.8. According to the Court, "[p]rison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests." *Id.*

Applying *Hudson* to the case at hand, if the Fourth Amendment does not prohibit the confiscation of legal papers within a prisoner's cell, it did not prohibit Defendants from confiscating Plaintiff's legal papers while Plaintiff was at the prison library. Therefore, Plaintiff fails to state a claim for a violation of his Fourth Amendment rights.

### 5.    Eighth Amendment Deliberate Indifference

Plaintiff alleges that Defendants Novak, Zupon, and Kerr exhibited deliberate indifference in violation of Plaintiff's Eighth Amendment rights. (ECF No. 1, PageID.15.) The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's

12

"evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or

safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Here, Plaintiff appears to point to two alleged Eighth Amendment violations. First, Plaintiff avers that Defendants engaged in verbal threats and harassment. And second, Plaintiff claims that Defendants ignored Plaintiff's requests concerning Plaintiff's "very painful hand and wrist condition" and visual impairment. The Court will address each set of allegations in turn.

### a.    Verbal Harassment and Threats

Allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey*, 832 F.2d at 955. Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.* Even the occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude. *See Torres v. Oakland Cnty.*, 758 F.2d 147, 152 (6th Cir. 1985). Accordingly, Plaintiff's Eighth Amendment claims premised upon Defendants' verbal harassment will be dismissed.

### b.    Actions Concerning Plaintiff's Physical Conditions

Plaintiff specifically alleges that Defendants Novak, Zupon, and Kerr were deliberately indifferent to Plaintiff's "serious medical need when . . . denying accommodation, and services of walking-aid." (ECF No. 1, PageID.15.) "The Supreme Court has long recognized that the government has a constitutional obligation to provide medical care to those whom it detains." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (citing *Estelle v. Gamble*, 429 U.S.

97, 104 (1976); *Rhinehart v. Scutt*, 894 F.3d 721, 736–37 (6th Cir. 2018); *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Deliberate indifference may be manifested by a medical professional's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.

However, Plaintiff does not allege that Defendants denied or delayed access to medical care. Instead, Plaintiff's claims are better categorized as claims for unconstitutional conditions of confinement using the standard for deliberate indifference described above, asking whether Plaintiff faced a sufficiently serious risk to his health or safety and whether the defendant acted with "'deliberate indifference' to [his] health or safety." *Mingus*, 591 F.3d at 479–80.

Examining Plaintiff's claims through the "conditions of confinement" lens , Plaintiff first alleges that Defendants Zupon and Novak refused to copy Plaintiff's "motion" despite Plaintiff telling Defendants that he was unable to copy the motion by hand due to a "very painful hand and wrist condition." (ECF No. 1, PageID.5.) Plaintiff does not further describe his hand and wrist condition other than to state that having to handwrite the copies of his complaint would cause Plaintiff's hand to "swell and lock up again" and would cause Plaintiff to "suffer in pain." (*Id.*, PageID.5–6.) These allegations, even taken as true, do not allow the Court to infer that Plaintiff faced "a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.

Moreover, a lack of copies, though potentially problematic, is not akin to "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Accordingly, the Court will not permit

Plaintiff to continue his pursuit of an Eighth Amendment claim concerning the denial of copies despite Plaintiff's "very painful hand and wrist condition."

Plaintiff also alleges that, on June 16, 2024, Defendant Zupon ordered Plaintiff to leave the library and refused to call Plaintiff's walking aid, stating, "I don't care that you can't see, I am not waiting on your walking aid, if Sgt. Kerr arrives because your walking-aid, you are going to be dragged to seg!" (ECF No. 1, PageID.9.) He claims that Defendant Kerr then arrived and stated, "Either leave now, or leave in cuffs" and, again, refused to allow Plaintiff to wait for his walking aid. (*Id.*, PageID.10.) Plaintiff claims that he is visually impaired and, without his walking aid, would "fall down, tripping over undiscernible objects." (*Id.*) Taking these allegations as true, Plaintiff's Eighth Amendment claims against Defendants Zupon and Kerr concerning the denial of Plaintiff's walking aid on June 16, 2024 cannot be dismissed on screening.

### 6.    Fourteenth Amendment Due Process Claim

Plaintiff alleges that Defendants confiscated Plaintiff's legal paperwork. To the extent that Plaintiff seeks to raise Fourteenth Amendment due process claims regarding these actions, his claims are barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378

(6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Apr. 26, 2021). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective Mar. 27, 2017). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his property. Accordingly, Plaintiff fails to state a due process claim regarding the confiscation of his legal papers.

### 7.    Violation of MDOC Policy and Work Rules

Plaintiff also references violation of MDOC policy and the "Civil Service Commission/Department Work Rules." (ECF No. 1, PageID.8.) To the extent that Plaintiff seeks to bring independent claims for these alleged violations, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27

F.3d 1162, 1166 (6th Cir. 1994). Therefore, Plaintiff's assertion that Defendants violated MDOC policy and the "Civil Service Commission/Department Work Rules" fails to state a claim under § 1983

### 8.    Conspiracy Claims

Plaintiff claims that Defendants engaged in a conspiracy to violate Plaintiff's civil rights. Specifically, he alleges that Defendants Zupon, Novak, and Kerr "colluded to punish Plaintiff for writing grievances as [well] as exercising medical need by putting Plaintiff in ad[ministrative] seg[regation]" and that Defendants Zupon, Novak, Kerr and Brown "colluded in the confiscation of Plaintiff's pleadings for the purpose of punishing Plaintiff for grievances and erecting barriers to thwart access to the court." (ECF No. 1, PageID.10–11.)

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Here, Plaintiff does not specifically allege that any "agreement" or "plan" existed between Defendants prior to the alleged acts of retaliation. (*See generally* ECF No. 1.) Instead, Plaintiff's

allegations of conspiracy are wholly conclusory. Plaintiff appears to rely entirely on an attenuated inference of a conspiracy from the fact that each Defendant sought to retaliate against Plaintiff. As the United States Supreme Court has held, such allegations, even if hinting at a sheer "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556–57. Instead, the Supreme Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Accordingly, because Plaintiff does not allege facts to show an agreement among Defendants, Plaintiff fails to state a plausible § 1983 civil conspiracy claim

### B.    Section 1985 Claims

In addition to his claims under § 1983, Plaintiff makes passing reference to claims under 42 U.S.C. § 1985. Section 1985 provides:

(1) Preventing officer from performing duties

If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties;

(2) Obstructing justice; intimidating party, witness, or juror

If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment

lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

(3) Depriving persons of rights or privileges

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985.

There are no allegations in Plaintiff's complaint that would support a claim that any defendant: (1) conspired to prevent an officer of the United States from performing his duty; (2) conspired to intimidate a participant in a proceeding in a court of the United States or conspired to interfere with due process in state courts with the intent to deprive persons of their equal protection rights; or (3) conspired to deprive any person of the equal protection of the laws. Therefore, Plaintiff fails to state a claim under 42 U.S.C. § 1985.

### C.    ADA Claims

Plaintiff seeks to bring claims for violation of his rights under Title II of the ADA, 42 U.S.C. §§ 12101–12213. (ECF No. 1, PageID.1.) He does not describe the nature of these ADA

claims. Examining the totality of Plaintiff's complaint, the Court will construe Plaintiff's allegations concerning the denial of Plaintiff's walking aid on June 16, 2024, as Plaintiff's claim for violation of Title II of the ADA.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In the ADA, the term "disability" is defined as follows: "[1] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [2] a record of such an impairment; or [3] being regarded as having such an impairment." *Id.* § 12102(2).

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates, *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998). The proper defendant for Title II ADA claims is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002); *see, e.g.*, *Tanney v. Boles*, 400 F. Supp. 2d 1027, 1044 (E.D. Mich. 2005) (citations omitted). Plaintiff alleges that both Defendants Zupon and Kerr denied Plaintiff the use of his walking aid on June 16, 2024 and sues both Defendants in their individual and official capacities. Because Plaintiff may not pursue ADA claims against Defendants Zupon and Kerr in their individual capacities, any intended ADA claims against Defendants Zupon and Kerr in their individual capacities will be dismissed.

As to Plaintiff's official-capacity ADA claims, the State of Michigan (acting through the MDOC) is not necessarily immune from Plaintiff's claims under the ADA. *See, e.g.*, *Tanney*, 400 F. Supp. 2d at 1044–47. The ADA "validly abrogates state sovereign immunity" for "conduct that *actually* violates the Fourteenth Amendment[.]" *United States v. Georgia*, 546 U.S. 151, 159

(2006). If conduct violates the ADA but not the Fourteenth Amendment, then the Court must determine whether the ADA validly abrogates state sovereign immunity. *Id.* At this stage of the proceedings, the Court will presume that the ADA validly abrogates state sovereign immunity for Plaintiff's ADA claims.

Turning to the merits of Plaintiff's ADA claims, Plaintiff's allegations show that Plaintiff was visually impaired to the extent that the MDOC had assigned him a walking aid to move about the prison while outside of his cell. He also alleges that he was denied this accommodation on June 16, 2024. Taking these allegations as true, the Court will allow Plaintiff to proceed with his ADA claims against Defendants Zupon and Kerr in their official capacities at this early stage of the litigation.

## <u>Conclusion</u>

Having conducted the review required by the PLRA, the Court determines that the following claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c): § 1983 official capacity claims, First Amendment claims for interference with Plaintiff's access to the courts, Fourth Amendment claims, Eighth Amendment claims concerning verbal harassment and threats and the denial of copies, Fourteenth Amendment claims, § 1983 claims for violations of MDOC policy and work rules, § 1983 conspiracy claims, claims for violation of § 1985, and ADA claims against Defendants Zupon and Kerr in their individual capacities. Plaintiff's First Amendment retaliation claims, Eighth Amendment claims against Defendants Zupon and Kerr for the denial of Plaintiff's walking aid, and ADA claims against Defendants Zupon and Kerr in their official capacities remain in the case.

An Order consistent with this Opinion will be entered.


Dated:  ___May 12, 2025___          ___/s/ Jane M. Beckering_____
                                    Jane M. Beckering
                                    United States District Judge